**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| **JUSTINA HOLLAND**, <br><br> *Plaintiff*, <br><br> v. <br><br> **UNITED STATES OF AMERICA; SHANE FEENEY, MICHAEL CARR,** and **MICHAEL SMITH,** in their individual capacities; <br><br> *Defendants*. | Civil Action No. 4:25-cv-00855-O |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

**INTRODUCTION**...........................................................................................................................**1**

**FACTUAL BACKGROUND** ........................................................................................................**1**
  I.    **Defendant Feeney Sexually Assaults Ms. Holland and BOP Officers Retaliate after She Reports.**..................................................................................................................... 1
  II.   **Defendant Feeney's Sexual Assault of Ms. Holland Occurs within a Long History of Staff-on-Prisoner Sexual Abuse in the BOP and at FMC Carswell.** ................................... 5

**STANDARD**...................................................................................................................................**8**

**ARGUMENT**..................................................................................................................................**9**
  I.    **Ms. Holland Satisfied the FTCA's Exhaustion Requirement.**...................................... 9
  II.   **The Discretionary Function Exception Does Not Apply Because the United States Breached Independent, Mandatory Duties.**........................................................................ 14
  III.  **Defendant Feeney Acted Within the Scope of His Employment.**........................... 17
  IV.   **Ms. Holland's IIED Claim is Not Duplicative.**............................................................ 23

**CONCLUSION** ...........................................................................................................................**24**

## TABLE OF AUTHORITIES

### CASES

*Adams v. United States*, 615 F.2d 284 (5th Cir. 1980) ....................................................... 9
*Adams v. United States*, 622 F.2d 197 (5th Cir. 1980) ....................................................... 9
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................. 8
*Banda-Martinez*, No. 4:24-CV-00391-O (slip op.) ((N.D. Tex. Mar. 31, 2025)..................... 15, 16
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)................................................................. 8
*Berkovitz v. United States*, 486 U.S. 531 (1988)............................................................... 15
*Bodin v. Vagshenian*, 462 F.3d 481 (5th Cir. 2006) ..................................................... 17, 20
*Brownback v. King*, 592 U.S. 209 (2021) ......................................................................... 8
*Cardenas v. United States*, No. 4:23-CV-00745-P, 2023 U.S. Dist. LX 204394 (N.D. Tex. Nov. 15, 2023) ....................................................................................................... passim
*Carrothers v. Noblestar Sys. Corp*, No. G-05-610, 2006 U.S. Dist. LX 25253, (S.D. Tex. March 21, 2006) ............................................................................................................ 23
*Cook v. United States*, 978 F.2d 164 (5th Cir. 1992)......................................................... 9
*Davis v. United States*, 474 F. Supp. 2d 829 (N.D. Tex. Feb. 16, 2007)................................ 22
*Doe v. Apostolic Assembly of the Faith in Christ Jesus*, 452 F. Supp. 3d 503 (W.D. Tex. 2020) 19, 20, 21, 22
*Doe v. Taylor Independent School District*, 15 F.3d 443 (5th Cir. 1994)................................ 22

*Dudley v. United States*, No. 4:19-CV-317-O, 2020 U.S. Dist. LX 16856 (N.D. Tex. Feb. 3, 2020) ............................................................................................................ 13, 14, 15

*Erickson v. Pardus*, 551 U.S. 89 (2007) ................................................................................11

*Fink v. Anderson*, 477 S.W.3d 460 (Tex. App.—Houston [1st Dist.] 2015) ......................... 18, 19

*Florence v. Bd. of Chosen Freeholders of Burlington*, 566 U.S. 318 (2012) ............................... 21

*Frantz v. United States*, 29 F.3d 222 (5th Cir. 1994) ................................................... 10

*Garza v. Harrison*, 574 S.W.3d 389 (Tex. 2019) ........................................................... 18, 22

*Hamburg v. U.S. Postal Serv.*, No. H-10-2186, 2010 U.S. Dist. LX 111566 (S.D. Tex. Oct. 20, 2010) ........................................................................................................ 22

*Hoffmann-La. Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438 (Tex. 2004) ...................................... 23

*L.B. v. United States*, 515 P.3d 818 (Mont. 2022) .......................................................... 21

*Laverie v. Wetherbe*, 517 S.W.3d 748 (Tex. 2017) ........................................................ 18, 22

*Life Partners, Inc. v. United States*, 650 F.3d 1026 (5th Cir. 2011) ............................................ 10

*M.D.C.G. v. United States*, 956 F.3d 762 (5th Cir. 2020) ................................................. 22

*Martinez v. Cornerstone Church*, No. 5:20-CV-01293-FB-RBF, 2022 U.S. Dist. LX 253131 (W.D. Tex. Jan. 19, 2022) ...................................................................................11

*Montez v. Dep't of the Navy*, 392 F.3d 147 (5th Cir. 2004) ..................................................... 8

*Montoya v. United States*, 841 F.2d 102 (5th Cir. 1988) ....................................................11

*Perkins v. United Surgical Partners, Int'l, Inc.*, No. 23-10375, 2024 U.S. App. LX 8804 (5th Cir. Apr. 11, 2024) .............................................................................................. 23

*Peteet v. Hawkins*, No. H-17-1312, 2018 U.S. Dist. LX 144406 (S.D. Tex. July 17, 2018) ........ 13

*Pleasant v. United States ex rel. Overton Brooks Veterans Admin. Hosp.*, 764 F.3d 445 (5th Cir. 2014) ........................................................................................................... 9

*Price v. Sw. Bell Tel. Co.*, 687 F.2d 74 (5th Cir. 1982) ....................................................11

*Sheridan v. United States*, 487 U.S. 392 (1988) ................................................................ 18

*Shirley v. United States*, No. 4:03-CV-1385-Y, 2006 U.S. Dist. LX 16169 (N.D. Tex. Mar. 21, 2006) ....................................................................................................... 22

*Sonnier v. State Farm Mut. Auto Ins.*, 509 F.3d 673 (5th Cir. 2007) ............................................ 9

*Terry v. Ohio*, 392 U.S. 1 (1968) ....................................................................................... 22

*Turnbaugh v. United States*, No. 3:17-CV-0719-M-BK, 2017 U.S. Dist. LX 180227 (N.D. Tex. Oct. 2, 2017) .......................................................................................................11

*United States v. Gaubert*, 499 U.S. 315 (1991) ............................................................... 15

*Zarzana v. Ashley,* 218 S.W.3d 152 (Tex.App.—Houston [14th Dist.] 2007) ............................. 19

## STATUTES

18 U.S.C. § 4042(a) .......................................................................................................... 21

28 U.S.C. § 2401(b) .......................................................................................................... 9

28 U.S.C. § 2675(a) .......................................................................................................... 9

28 U.S.C. § 2680(a) .......................................................................................................... 14

## OTHER AUTHORITIES

Claim Form, *Cardenas v. United States*, No. 4:23-CV-00745-P, Dkt. 17-1 ................................. 10

Complaint, *Dudley*, No. 4:19-CV-00317-O, Dkt. 1-1 .......................................................... 14

## RULES

Fed. R. Civ. P. 12(b)(6) .............................................................................................. 8, 23

**REGULATIONS**

28 C.F.R. § 115.61(a) .................................................................................................. 7, 15, 16

28 C.F.R. § 115.62 .............................................................................................................. 8

28 C.F.R. § 115.71(a) .................................................................................................. 7, 15, 17

28 C.F.R. § 115.76(b).................................................................................................... 8, 16

BOP Program Statement 3420.11 ........................................................................... 7, 16

BOP Program Statement 5324.12 ....................................................................... 8, 16, 17

## INTRODUCTION

Defendant Shane Feeney violently raped Plaintiff Justina Holland while Feeney was an FMC Carswell correctional officer and Ms. Holland was incarcerated. Defendant Feeney used his status and authority as an officer on Ms. Holland's floor even though Bureau of Prisons ("BOP") officials knew he had previously been reported for inappropriate sexual conduct with prisoners and bringing contraband, including drugs, into the prison. Despite Defendant Feeney's history, BOP officials did nothing to protect Ms. Holland from predators like Defendant Feeney.

Defendants' arguments for dismissal fail across the board. *First*, Ms. Holland exhausted her Federal Tort Claims Act ("FTCA") claims because she provided sufficient notice that her claims included issues outside the sexual assault, including Defendants' enforcement of Prison Rape Act Elimination regulations and BOP policies and their failure to adequately supervise FMC Carswell employees. *Second*, the discretionary function exception is inapplicable because Ms. Holland pled that Defendants violated mandatory duties. *Third*, Defendant Feeney acted within the scope of his employment under Texas law, as his conduct stemmed from the exercise of his delegated duties. *Fourth*, and finally, Ms. Holland's intentional infliction of emotional distress claim should not be dismissed because it is based on post-abuse conduct that is distinct from the factual bases of her other claims.

## FACTUAL BACKGROUND

### I. Defendant Feeney Sexually Assaults Ms. Holland and BOP Officers Retaliate after She Reports.

In 2021, Ms. Holland self-surrendered to the Bureau of Prisons. Am. Compl. Dkt. 35 ¶¶ 113, 115. Before her incarceration, Ms. Holland suffered stroke-like symptoms following an accident at home and was partially paralyzed on her right side. *Id.* ¶ 115. Because of her medical condition, Ms. Holland was placed at FMC Carswell on one of the prison's medical floors. *Id.* ¶¶

1

114, 116. FMC Carswell is the only federal BOP medical and psychiatric facility in the country for women. *Id.* ¶ 27. It houses people requiring more intensive medical care, people with mental and physical disabilities, and people who cannot take care of their own medical needs. *Id.*

Ms. Holland was wheelchair-bound and wholly dependent on other people, requiring assistance to get in and out of her wheelchair, move around, open food, button her pants, and even brush her hair. *Id.* ¶¶ 119-21.

In February 2022, Defendant Feeney began working in Ms. Holland's unit. *Id.* ¶ 122. He worked the 4:00 p.m.-to-midnight shift. *Id.* ¶ 123. Feeney was friendly and would talk with Ms. Holland about her family, football, and church. *Id.* ¶ 124. He also would join the Bible study group that Ms. Holland ran. *Id.* ¶¶ 125-126.

At first, Ms. Holland believed that Feeney was a nice guy who wanted to treat prisoners with kindness. *Id.* ¶ 127. Things started to change in April 2022 when Feeney entered her room and showed her roommate a bottle of pills. *Id.* ¶ 128. Ms. Holland knew that her roommate sold drugs, and Defendant Feeney's actions indicated that he was supplying them to her. *Id.* ¶ 129.

After this point, Ms. Holland started seeing Defendant Feeney get friendlier with the other prisoners. *Id.* ¶ 133. He would come into women's rooms and sit on their bed to talk for hours, bring in outside food and other contraband, and talk with Ms. Holland about his sexual partners outside the prison. *Id.* ¶ 134. Ms. Holland started to feel like something was off, and that Defendant Feeney was interested in something in return for his kindness. *Id.* ¶ 136.

In July 2022, Ms. Holland suffered another neurological incident and her right hand entirely contracted in. *Id.* ¶ 137. While Ms. Holland was alone waiting for a nurse, Feeney entered the room, shut the door, sat next to Ms. Holland, and held her hand. *Id.* ¶ 138. She felt incredibly uncomfortable. *Id.* ¶ 139.

This discomfort was compounded by rumors Ms. Holland had heard about disciplinary issues Defendant Feeney had at FMC Carswell, including bringing in contraband for prisoners and having inappropriate, sexual relationships with prisoners. *Id.* ¶ 140. Defendant Feeney had once confided in Ms. Holland that he had been written up for disciplinaries, but that he was being targeted for being too nice. *Id.* ¶ 141. Ms. Holland also knew that, despite this disciplinary history, Defendant Feeney was allowed to remain working and was not terminated from his position as an officer. *Id.* ¶¶ 142-143. Defendant Feeney was moved to Ms. Holland's floor after he had been caught bringing in drugs and having inappropriate sexual relations with female prisoners on the floor he had previously been assigned. *Id.* ¶ 145. He was not suspended or fired, and he continued to have unfettered access to FMC Carswell prisoners. *Id.* ¶¶ 146-149.

In September 2022, Ms. Holland was showering in the bathroom inside her cell. *Id.* ¶¶ 150-151. Because she could not move the right side of her body, Ms. Holland's roommate had to help her get into the shower chair in her shower. *Id.* ¶ 152. Her roommate pushed her wheelchair into the shower, helped her into the chair, and then left the bathroom. *Id.* ¶ 153.

Ms. Holland heard the door to the bathroom open and assumed that it was her roommate. *Id.* ¶ 154. But Defendant Feeney opened the shower curtain. *Id.* ¶ 155. He grabbed and lifted Ms. Holland by her left arm, letting her right side hang off him. *Id.* ¶ 156. He unzipped his pants and told her to keep her mouth shut. *Id.* ¶ 157. He then sodomized Ms. Holland while she screamed for help. *Id.* ¶ 158. Ms. Holland is not sure how long the assault lasted. *Id.* ¶ 159. When they heard a noise, Defendant Feeney dropped Ms. Holland in the shower and left. *Id.* ¶ 160. Ms. Holland lied on the shower floor, her knuckles bloodied, and cried hysterically. *Id.* ¶ 161.

Ms. Holland left the shower by hooking her left foot onto the wheelchair, army-crawling to it, and pulling herself up. *Id.* ¶ 162. Another prisoner told Ms. Holland that she heard yelling.

3

*Id.* ¶ 163. Ms. Holland asked her not to tell anyone because she feared retaliation and thought nobody would believe her. *Id.* ¶¶ 164-65.

Ms. Holland did not see Defendant Feeney again until he worked an overtime shift on her floor on April 19, 2023. *Id.* ¶ 167. She was immediately triggered and the trauma of the rape came rushing back. *Id.* ¶ 168. She called her husband, who reported the rape. *Id.* ¶¶ 169-170.

A nurse at Carswell told Ms. Holland that she had previously reported Defendant Feeney to BOP officials for sexually harassing other prisoners and having a female prisoner alone in his office, but that nothing had been done. *Id.* ¶¶ 171-73.

Ms. Holland spoke with various BOP and OIG officials as part of the investigation. *Id.* ¶¶ 175-78. An OIG investigator confirmed to Ms. Holland that Defendant Feeney had also been disciplined for bringing in drugs. *Id.* ¶ 178. The OIG investigator also met with other prisoners, and told some prisoners that Ms. Holland reported to her that Defendant Feeney was bringing in drugs. *Id.* ¶¶ 179-80. As a result, Ms. Holland was threatened by prisoners, and she requested protective custody the day after OIG began interviewing others because she feared for her life. *Id.* ¶ 181. She requested protective custody again in November 2023, after she was moved to another unit with many women Defendant Feeney had been supplying with drugs. *Id.* ¶ 182. Ms. Holland was intentionally placed in these units as retaliation, because staff knew that other prisoners blamed Ms. Holland for the decrease in drugs entering the facility. *Id.* ¶ 183.

Months later, Ms. Holland received some therapy through the Women's Rape Crisis Center, but the sessions were conducted in a room with two-way mirror where the staff lounge was on the other side. *Id.* ¶¶ 184-86. Ms. Holland presented with symptoms consistent with reported sexual trauma including anxiety, avoidance, concentration difficulties, crying, depression, difficulty not thinking about the trauma, difficulty trusting, eating problems, fatigue,

4

fear, feeling emotionally numb, flashbacks, headaches, helplessness, intrusive thoughts, loss of self-confidence, nightmares, shame, sleep difficulties, and stress. She was also diagnosed with PTSD. *Id.* ¶ 187.

Although Ms. Holland was then moved to a new prison, she continued to face retaliation. *Id.* ¶ 188. Her application for a halfway house was initially delayed for months after she was eligible, and her release was delayed even after she received a date. *Id.* ¶¶ 189-90. Ms. Holland was finally released from BOP custody in October 2025. *Id.* ¶ 192. Her compassionate release was granted on March 31, 2026, and became effective on April 8. *See* Order, *U.S. v Holland*, 6:20-cr-00086-RBD-NWH (M.D. Fla., March 31, 2026). She is no longer on supervised release.

## II. Defendant Feeney's Sexual Assault of Ms. Holland Occurs within a Long History of Staff-on-Prisoner Sexual Abuse in the BOP and at FMC Carswell.

FMC Carswell's medical and mental health prisoners constitute a population especially vulnerable to sexual abuse. *Id.* ¶ 27. Sexual abuse by correctional officers and other staff at BOP facilities has been documented and known to Defendants for decades. *Id.* ¶ 20-21

In 2022, the year Ms. Holland was sexually assaulted, DOJ internal investigations following the revelation of rampant abuse at FCI Dublin identified that nearly two-thirds of BOP facilities had documented sexual abuse allegations, including FMC Carswell. *Id.* ¶ 22. In the PREA (Prison Rape Elimination Act) Audit Report at FMC Carswell conducted at the beginning of 2022, it was noted that in just the previous twelve months, nine officers were referred for criminal prosecution for sexually assaulting a prisoner. *Id.* ¶ 42.

Yet this problem did not begin in the 2020s; FMC Carswell has a long history of staff-on-prisoner sexual abuse. Since 1997, at least 12 correctional staff at FMC Carswell have been convicted of sexual abuse that occurred while at FMC Carswell. *Id.* ¶ 28, including a 2004 conviction of an officer for five counts of assault, abusive sexual contact with a ward, abusive

sexual contact, sexual abuse of a ward, and aggravated sexual abuse, *id.* ¶ 32, and a 2008 conviction of a chaplain resulting in a four-year prison sentence for sexual abuse. *Id.* ¶ 33. One prisoner reported abuses that occurred in 2011, 2012, 2015, 2017, and 2018, including rape committed by two federal officers, who also beat her unconscious and attacked her with a burning liquid after she reported the rape. *Id.* ¶ 34. From 2014 to 2018, 35 women at FMC Carswell reported sexual abuse from staff members. *Id.* ¶ 43. This number was the highest rate of reported sexual abuse of any federal women's prison, until recent news about FCI Dublin. *Id.* The true number of assaults that occurred over this period at FMC Carswell is likely worse than records suggest because many prisoners don't report sexual assaults for fear of retaliation. *Id.* ¶ 44. Undersigned counsel alone represents fourteen women who reported sexual abuse at FMC Carswell, who are not represented in the number above. *Id.* ¶ 45. From 2012 to 2021, the BOP Office of Internal Affairs substantiated at least 16 cases of BOP staff sexually abusing women incarcerated at FMC Carswell, almost all before Defendant Feeney raped Plaintiff. *Id.* ¶ 35.

A BOP staff member who worked at FMC Carswell described the prison as "the perfect place for sexual misconduct," but remained anonymous for fear of retaliation. *Id.* ¶ 39. This same officer had previously reported a lieutenant for exchanging drugs for sex and was subsequently retaliated against and fired. *Id.* The officer reported that, in retaliation for her reports of misconduct, a lieutenant intentionally tried to rile up women in her unit to cause them to fight her; another time, a group of senior officers cornered her in the parking lot after work and threatened her. *Id.* ¶ 40. Other officers told her she would lose her job for reporting misconduct, which she interpreted to mean that everyone knew to stay silent if they wanted to keep their jobs. *Id.* Prisoners who reported the sexual assault that they experienced at FMC Carswell also reported retaliation, including the prison taking away access to family visits,

ransacking their property, waking them up, verbally threatening and abusing them, and placing them in solitary confinement. *Id.* ¶ 41.

Despite the audits, lawsuits, and criminal referrals, the abuse has continued, and Defendants have failed to take appropriate action to prevent future abuse including allowing male staff to spend extensive time alone and unsupervised with incarcerated women at FMC Carswell. *Id.* ¶ 47. The culture of sexual abuse and Defendants' failure to investigate allegations of sexual abuse; document, track, investigate, or reprimand known sexual predators; or otherwise monitor and protect prisoners at FMC Carswell—and across BOP facilities— directly led to Ms. Holland's abuse. *Id.* ¶¶ 48, 49-112.

The mismanagement that allowed this conduct existed in the face of binding PREA regulations and BOP Program Statements requiring the contrary. *Id.* ¶ 98. Binding PREA regulations, which apply across the BOP, mandate staff reporting, where all BOP staff are required to "report immediately . . . **any knowledge, suspicion, or information** regarding an incident of sexual abuse or sexual harassment that occurred in a facility. . .; retaliation against inmates or staff who reported such an incident; and any staff neglect or violation of responsibilities that may have contributed to an incident or retaliation." 28 C.F.R. § 115.61(a) (emphasis added). Am. Compl. ¶ 99. Further, BOP Program Statement 3420.11 requires any employee to "report to their CEO (or other appropriate authority such as the [OIA] or [OIG]) any violation, appearance of a violation, or attempted violation of these standards or of any law, rule, or regulation." Am. Compl. ¶ 100. According to the PREA Resource Center, because of the requirement to report suspicion of sexual abuse, rumors of sexual abuse amongst prisoners and staff should trigger the same mandate as above, requiring immediate reporting to the supervisory authority and investigation of the alleged perpetrator. *Id.* ¶ 101.

Section 115.71(a) of the C.F.R. requires administrative investigations of alleged sexual abuse by a staff member to proceed "promptly, thoroughly, and objectively for all allegations, including third-party and anonymous reports." Am. Compl. ¶ 103. And § 115.62 requires that, when an incarcerated person is subject to a substantial risk of imminent sexual abuse, the BOP shall take immediate action to protect that person. Am. Compl. ¶ 102. Similarly, BOP Program Statement 5324.12 requires that "[a]llegations of sexually abusive behavior receive prompt intervention upon report." Am. Compl. ¶ 104. § 115.76(b) of the C.F.R. sets the presumptive disciplinary sanction for substantiated allegations of sexual abuse as termination. Am. Compl. ¶ 105. Further, § 115.83 mandates that the BOP offer medical and mental health care to sexual abuse victims. Am. Compl. ¶ 106. Even so, despite Defendant Feeney's rumored and documented prior inappropriate relationships with prisoners and introduction of illegal drugs, the openness in which he flirted with prisoners, the frequency with which he brought in illegal drugs, Defendants did not investigate, discipline, terminate, supervise, monitor, question, or stop Feeney in any way. *Id.* ¶¶ 107-110.

## STANDARD

"[I]n the unique context of the FTCA, all elements of a meritorious claim are also jurisdictional." *Brownback v. King*, 592 U.S. 209, 217 (2021). As an attack on an FTCA element constitutes an "intertwined" attack on both the merits and jurisdiction, a court weighing a jurisdictional challenge must apply the standards of Rules 12(b)(6) and resolve any uncertainties in the plaintiff's favor. *Montez v. Dep't of the Navy*, 392 F.3d 147, 150 (5th Cir. 2004).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual

8

content that allows a court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Id.* A court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto Ins.*, 509 F.3d 673, 675 (5th Cir. 2007).

## ARGUMENT

### I.     Ms. Holland Satisfied the FTCA's Exhaustion Requirement.

Ms. Holland properly pursued and exhausted her administrative remedies through the administrative claim that she filed *pro se* with the BOP. Dkt. 50-2 (App'x USA 007). Exhaustion of administrative remedies is a prerequisite to filing suit under FTCA. *See* 28 U.S.C. §§ 2675(a); 2401(b). Administrative claim requirements are meant "to benefit claimants" and "to lessen the court case load through fair settlement, not procedural default." *Pleasant v. United States ex rel. Overton Brooks Veterans Admin. Hosp.*, 764 F.3d 445, 450 (5th Cir. 2014) (per curiam)*.* The FTCA's administrative-presentment requirement is satisfied when the government has actual, written notice of the claim sufficient to enable investigation and settlement negotiations. *Id.* at 449. A claimant gives proper notice when (1) the agency receives written notice sufficient to enable investigation, and (2) the claimant places a value on the claim. *Id.*; *Cook v. United States*, 978 F.2d 164, 165–66 (5th Cir. 1992); *Adams v. United States*, 615 F.2d 284, 288–89 (5th Cir. 1980), *clarified on denial of reh'g*, *Adams v. United States*, 622 F.2d 197 (5th Cir. 1980). Defendants have not disputed that Ms. Holland placed a value on her claim.

Defendants instead argue that Ms. Holland's administrative claim did not allege "negligence in BOP's internal procedures or in its supervision of BOP officers," and that Holland failed to alert the United States of "facts sufficient to enable it [to] thoroughly investigate its potential liability and to conduct settlement negotiations with [her]" as to these claims of

9

negligence. Dkt. 50 at 16–17. For these reasons, Defendants allege that Ms. Holland did not notify BOP of the "broader claims of negligence that she presses now." *Id.*

But Defendants' argument relies on an improperly narrow interpretation of Fifth Circuit precedent. The Fifth Circuit "has not required plaintiffs to specifically enumerate legal theories of recovery in their administrative claims." *Life Partners, Inc. v. United States*, 650 F.3d 1026 (5th Cir. 2011) (citing *Frantz v. United States*, 29 F.3d 222, 224 (5th Cir. 1994));, *Rise v. United States*, 630 F.2d 1068 (5th Cir. 1980). In *Rise*, the Fifth Circuit explicitly held that theories of liability outside of those "specifically enumerated" in the administrative complaint are exhausted "if the Government's investigation of [plaintiff's] claim should have revealed [those] theories of liability." *Id.* at 1071. There, the court found that an administrative claim gave adequate notice that prior events relating to the medical care of the decedent were part of the "chain of events culminating in [her] death." *Id.* at 1071–72. The administrative claim stated: "[O]n May 4, 1973, [the decedent] was taken to Fort McPherson Army Hospital, given a spinal tap and immediately transferred to South Fulton Hospital." *Id.* (internal quotations omitted). The court found that statement sufficient to instigate an investigation that should have produced evidence that the second facility may have been inadequate for aneurysm surgery and therefore that transferring the decedent there may have been negligent. *Id.*

Similarly, in *Cardenas v. United States*, No. 4:23-CV-00745-P, 2023 U.S. Dist. LX 204394 (N.D. Tex. Nov. 15, 2023), Judge Pittman rejected the Government's assertion that the plaintiff failed to exhaust her administrative remedies regarding the BOP's institutional failures leading to her sexual assault at FMC Carswell. *Id.* at *3. In that case, a lawyer on the plaintiff's behalf submitted a detailed demand letter that explicitly enumerated legal theories and PREA regulations. Claim Form, *Cardenas*, No. 4:23-CV-00745-P, Dkt. 17-1. Even so, because the letter

did not specifically allege the failure to timely investigate or prosecute reports of sexual abuse, which supported claims in the plaintiff's complaint, the Government argued that she had failed to exhaust. 2023 U.S. Dist. LX 204394 at *3. The court held that the Government's argument "cut[] against the thrust of Fifth Circuit precedent, which had adopted an 'expansive' understanding of the FTCA notice requirement." *Id.* (citing *Montoya v. United States*, 841 F.2d 102, 105 (5th Cir. 1988)). Instead, the claim's "general contours provided the BOP with sufficient notice of [the plaintiff's] claims and the overarching facts upon which they are based." *Id.* at *9-10. Thus, the plaintiff satisfied the exhaustion requirement by providing "fair notice . . . , not a granular explication of every theory of liability." *Id.*

Ms. Holland's administrative complaint contains allegations sufficient under Fifth Circuit precedent to have put the BOP on notice that its actions led to the sexual assault she experienced. To begin, unlike in *Cardenas*, Ms. Holland filed her administrative claim *pro se*. The Fifth Circuit has long recognized that "courts must remain flexible when reviewing [alleged] failures of persons unfamiliar with administrative complexities to comply with procedural rules." *Price v. Sw. Bell Tel. Co.*, 687 F.2d 74, 77 (5th Cir. 1982). Courts "liberally construe … filings with all possible deference due a *pro se* litigant," *Turnbaugh v. United States*, No. 3:17-CV-0719-M-BK, 2017 U.S. Dist. LX 180227, at *7 (N.D. Tex. Oct. 2, 2017) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), including administrative filings, such as those required in Equal Employment Opportunity Commission proceedings. *Martinez v. Cornerstone Church*, No. 5:20-CV-01293-FB-RBF, 2022 U.S. Dist. LX 253131, at *5-6 (W.D. Tex. Jan. 19, 2022).

Beyond the facts of the sexual assault, Ms. Holland mentioned in her claim: 1) that the BOP was "[b]reaking every single PREA policy there is;" 2) that, while cooperating with OIG's investigation, she "gave facts to other illegal things being done;" 3) "threats to cause [her] bodily

11

harm;" 4) "documented staff retaliation;" 5) that she "endured relentless retaliation threats;" and 6) that she was "disabled and had no use of the right side of [her] body." Dkt. 50-2.  Ms. Holland's mention of PREA violations was sufficient to give the BOP fair notice of Ms. Holland's negligence and supervisory negligence claims and the fact that the claims included violations of PREA, which explicitly involves institutional responses and prevention measures relating to sexual assault. *See* 108 Pub. L. 79, 117 Stat. 972 (noting the purpose of PREA is "[t]o provide for the analysis of the incidence and effects of prison rape in Federal, State, and local institutions and to provide information, resources, recommendations, and funding to protect individuals from prison rape.")

Ms. Holland's mention of her report to OIG of illegal conduct was sufficient to trigger an investigation that should have revealed, at the very least, that Defendant Feeney was previously disciplined for bringing drugs into the prison to give to prisoners. Dkt. 35 ¶ 178. A reasonably competent investigation would also have revealed an FMC Carswell nurse had previously reported Defendant Feeney for sexual misconduct, and for the suspicious behavior of having a prisoner alone in his room sitting on his desk. *Id.* ¶¶ 172-173. Ms. Holland's mentions of threats of bodily harm, documented staff retaliation, and relentless retaliation were sufficient to give Defendants notice that she was alleging wrongdoing by staff other than Defendant Feeney, and that she was alleging that Defendants had violated PREA's requirements to protect a victim from retaliation. An investigation of her claim would have revealed the same.

Lastly, Ms. Holland's mention of her disability was sufficient to trigger an investigation that should have revealed that Ms. Holland was wholly dependent on others, that she was particularly vulnerable to sexual assault, and that she had nonetheless been housed on a floor with an officer with prior allegations of inappropriate sexual conduct related to prisoners and

12

who was either subjected to minimal supervision or supervisors who ignored or permitted his obviously suspicious conduct.

Ms. Holland's administrative claim provided far more information than the claim in *Rise*, and thus was sufficient to constitute notice and trigger an investigation. While Ms. Holland's claim provided less information than the lawyer-crafted demand letter in *Cardenas*, the Fifth Circuit's expansive understanding of the FTCA notice requirement does not require even a lawyer to explicitly name every allegation of wrongdoing. Ms. Holland's *pro se* claims provided the BOP with sufficient notice of her claims and the overarching facts on which they are based.

Defendants primarily rely on two cases which found a failure to exhaust administrative remedies regarding negligent retention and supervision: *Peteet v. Hawkins*, No. H-17-1312, 2018 U.S. Dist. LX 144406 (S.D. Tex. July 17, 2018) and *Dudley v. United States*, No. 4:19-CV-317-O, 2020 U.S. Dist. LX 16856 (N.D. Tex. Feb. 3, 2020). Yet the plaintiffs in those cases "failed to mention or allude to any facts providing notice of [their] negligence claims." *Dudley*, 2020 U.S. Dist. LX 16856 at *31. In *Peteet*, the plaintiff's administrative claim stated:

> [The plaintiff] was a federal prisoner at the Houston Detention Center in Houston, Texas from May 5, 2015-November 19, 2015. During this period, she was repeatedly sexually abused by a guard named Samuel Hawkins.
>
> A few days prior to [the plaintiff's] departure, on or about November 15, 2015, Mr. Hawkins forcefully engaged in oral and vaginal sex with [the plaintiff].
>
> This matter is being investigated by Bruce Douglas of the Justice Department in Houston. Mr. Douglas advised that the DNA obtained in the rape kit following the final assault identifies Mr. Hawkins.

2018 U.S. Dist. LX 144406 at *4. Peteet's claim failed to mention or even allude to any facts about the negligence of others.

In *Dudley*, the plaintiff's administrative claim "describe[d] the November 1, 2016 sexual assault by McGaugh, the United States' subsequent investigation of the assault and prosecution

of McGaugh, and the alleged harassment of [the plaintiff] following her identification of McGaugh as her assailant." 2020 U.S. Dist. LX 16856 at *31. Unlike Ms. Holland's claim, the claim in *Dudley* did not mention PREA, any other illegal activity, or a particular vulnerability to sexual assault. Compl., *Dudley*, No. 4:19-CV-00317-O, Dkt. 1-1 at 5. This Court held that the plaintiff "only included facts relating to the assault itself … and did not provide any other facts putting the government on notice of any other potential claims." 2020 U.S. Dist. LX 16856 at *31. Ms. Holland, however, provided enough notice by including facts beyond the assault. Consequently, she satisfied the FTCA's exhaustion requirement.

II.     **The Discretionary Function Exception Does Not Apply Because the United States Breached Independent, Mandatory Duties.**

Defendants contend that the discretionary function exception to the FTCA bars Ms. Holland's negligence and negligent supervision claims[1] because (1) Ms. Holland does not identify specific binding statutes, regulations, or policies that federal employees violated; and (2) decisions regarding supervision, hiring, and security are inherently discretionary. That said, the exception does not apply because Ms. Holland alleged that federal employees violated binding regulations under PREA, and that their actions were not policy decisions of the kind that the discretionary function exception was designed to shield.

The discretionary function exception bars tort claims against the United States if the claims are "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Courts apply a two-

---

[1] In Plaintiff's First Amended Complaint, Ms. Holland asserts three negligence claims, including: (1) negligence under FTCA and Texas common law against Defendant U.S. (Count I, Dkt. No. 31 at 30); (2) negligent supervision under FTCA against Defendant U.S. (Count VI, Dkt. No. 31 at 37); and (3) negligent supervision under Texas law against Defendants Carr and Smith (Count VII, Dkt. No. 31 at 38). Because the U.S. has filed a Notice of Substitution (Dkt. 49), which Ms. Holland does not dispute, Counts VI and VII are now equivalent.

prong test to determine whether an act or omission by a federal employee constitutes a discretionary function. *United States v. Gaubert*, 499 U.S. 315, 322–23 (1991). First, courts ask whether the conduct involves "an element of judgment or choice." *Id.* at 322. The judgment or choice requirement is not satisfied where a "'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere to the directive.'" *Id.* at 322–23 (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). Second, if the first prong is satisfied, courts ask "whether that judgment is of the kind that the discretionary-function exception was designed to shield." *Id.* at 323. If a plaintiff points to regulations to overcome the discretionary function exemption, courts look specifically at the regulations to determine (1) whether the regulation lays out a mandatory requirement and (2) whether Plaintiff's clearly stated allegations violate the regulation's mandatory requirement. *See, e.g., Dudley*, 2020 U.S. Dist. LX 16856 at *12; *Banda-Martinez*, No. 4:24-CV-00391-O (slip op.), at *6–7 (N.D. Tex. Mar. 31, 2025) (O'Connor, J.).

Here, Ms. Holland's allegations detail how federal employees violated binding regulations and therefore overcome the discretionary function exception. Plaintiff's Amended Complaint contains detailed factual allegations that BOP officials violated specific, mandatory directives set forth in federal regulations and BOP Program Statements, including:

- 28 C.F.R. § 115.61(a), which requires all BOP staff to "report immediately. . . **any knowledge, suspicion, or information** regarding an incident of sexual abuse or sexual harassment that occurred in a facility. . . ; retaliation against inmates or staff who reported such an incident; and any staff neglect or violation of responsibilities that may have contributed to an incident or retaliation." Dkt. No. 31 ¶ 104;

- 28 C.F.R. § 115.71(a), requiring administrative investigations of alleged sexual abuse

15

by a staff member to proceed "promptly, thoroughly, and objectively for all allegations, including third-party and anonymous reports." *Id.* ¶ 108;

- 28 C.F.R. § 115.76(b), which provides that the presumptive disciplinary sanction for substantiated allegations of sexual abuse is termination. *Id.* ¶ 110;

- BOP Program Statement 3420.11, which mandates that employees "report to their CEO (or other appropriate authority such as the [OIA] or [OIG]) any violation, appearance of a violation, or attempted violation of these standards or of any law, rule, or regulation." *Id.* ¶ 105; and

- BOP Program Statement 5324.12, which requires that "[a]llegations of sexually abusive behavior receive prompt intervention upon report." *Id.* ¶109.

These regulations and policy statements set out binding regulations. In *Banda-Martinez*, this Court determined that preventing another staffer from reporting a BOP employee's inappropriate conduct with a prisoner "could plead a violation of a mandatory policy." *See Banda-Martinez* (slip op.), at *7–8 (discussing plaintiff's claim under 28 C.F.R. § 115.61). Because Holland alleges that staff who report sexual abuse are terminated or retaliated against, Ms. Holland's claim under Section 115.61 is not precluded by the discretionary function exception. *See* Dkt. 35 ¶¶ 43, 116. Moreover, Plaintiff's Amended Complaint details the ongoing retaliation Ms. Holland suffered at two BOP facilities because she reported the rape.

Further, in *Cardenas*, Judge Pittman deemed mandatory Sections 115.61 and 115.76 of the Prison Rape Elimination Act (PREA) and Program Statements 3420.11 and 5342.12. 2023 U.S. Dist. LX 204394 at *20-23. First, BOP officials in *Cardenas* and here failed to report sexual harassment/assault and retaliation as they are required to do under Section 115.61(a) and Program Statement 3420.11. *Id.*; *See* Dkt. 35 ¶¶ 2, 4, 112–15, 145, 185, 188, 193, 202. As a

16

result, Holland's claims under Section 115.61(a) and Program Statement 3420.11 are not precluded by the discretionary function exception because BOP officials failed to report the retaliation against Ms. Holland.

Second, because Ms. Holland alleges that the BOP took no disciplinary action following the nurse reporting Defendant Feeney for sexually harassing prisoners and merely moved Defendant Feeney to another unit where he would continue to have direct authority over women prisoners, as in *Cardenas*, Holland's "claim under Section 115.76 isn't precluded by the discretionary-function exception." 2023 U.S. Dist. LX 204394 at *8; s*ee* Dkt. 35 ¶¶ 114, 177. Dkt. No. 31 ¶ 177. Moreover, because both the *Cardenas* complaint and Plaintiff's Amended complaint allege that "the BOP failed to intervene at all and only took action after [the defendant's] assault of [plaintiff]," Holland's claims under Program Statement 5324.12 (and similarly Section 115.71) are not precluded. *Id*. at *9; *see* Dkt. 35 ¶¶ 114, 152, 177, 226.

Third, though *Cardenas* did not address § 115.71(a), requiring administrative investigations of alleged sexual abuse by a staff member to proceed "promptly, thoroughly, and objectively for all allegations, including third-party and anonymous reports," Ms. Holland has alleged that after the nurse's report, BOP officials did nothing. Thus, no administrative investigation occurred, let alone a prompt, thorough, and objective investigation. Thus, Ms. Holland has identified specific statutes, regulations, and/or policies that BOP officials violated and the discretionary function exception does not defeat the Court's jurisdiction.

### III.    Defendant Feeney Acted Within the Scope of His Employment.

Under the FTCA, whether an employee is acting within the scope of his employment is governed by the law of the state where the wrongful act occurred. *Bodin v. Vagshenian*, 462 F.3d

481, 484 (5th Cir. 2006). In moving to dismiss Counts II and IV,[2] Defendants rely on an outdated understanding of Texas common law based on federal court decisions that require an inapposite subjective test that examines whether an employee was motivated by "personal animus" or "personal gratification." *See id.* Instead, the scope of employment is an objective test.

In *Laverie v. Wetherbe*, 517 S.W.3d 748 (Tex. 2017), the Texas Supreme Court definitively clarified that Texas law demands a strictly objective scope-of-employment test that does not depend on the employee's subjective intent or state of mind:

> The scope-of-employment analysis, therefore, remains fundamentally objective: Is there a connection between the employee's job duties and the alleged tortious conduct? The answer may be yes even if the employee performs negligently or is motivated by ulterior motives or personal animus so long as the conduct itself was pursuant to her job responsibilities.

*Laverie*, 517 S.W.3d at 753-55. The Court then stated its holding plainly: "The fundamental inquiry therefore is not whether [the employee] did her job well or poorly, or whether she did her job selfishly or altruistically, but simply whether she was doing her job." *Id.* at 755.

Two years later, the Texas Supreme Court reaffirmed the purely objective scope-of-employment test in *Garza v. Harrison*, 574 S.W.3d 389 (Tex. 2019): "[T]he employee's state of mind, motives, and competency are irrelevant so long as the conduct itself was pursuant to the employee's job's responsibilities." *Id.* at 401. Consequently, whether Defendant Feeney acted for his own sexual gratification is irrelevant to the scope of employment test.

Under Texas' objective standard, "co-existing motivations do not remove an employee's

---

[2] Count II is a claim under the FTCA for intentional infliction of emotional distress (IIED) and Count IV is an FTCA claim for sexual assault. Both are intentional torts. The government admits that IIED falls outside the FTCA's general bar of some intentional torts and that Feeney's actions as a BOP officer fall within the law enforcement proviso that allows intentional tort claims to be asserted under the FTCA, pursuant to 28 U.S.C. § 2680(h). Dkt. 50 at 19-20, 22-23.

Defendants do not move to dismiss any of the negligence claims because of the scope of employment issue. As the Supreme Court noted in *Sheridan v. United States*, 487 U.S. 392 (1988), "it is both settled and undisputed that in at least some situations the fact that an injury was directly caused by an assault or battery will not preclude liability against the Government for negligently allowing the assault to occur." *Id.* at 398.

actions from the scope of his employment so long as the conduct also serves a purpose of the employer." *Fink v. Anderson*, 477 S.W.3d 460, 471 (Tex. App.—Houston [1st Dist.] 2015). In *Fink*, the court held that the pertinent question was not whether the alleged intentional tort was within the employee's scope of employment, but whether his "general conduct" was "conduct that served any purpose of his employer." *Id.* at 470. Even if Feeney was subjectively motivated by sexual gratification, he had "co-existing motivations" because he was simultaneously engaged in the general conduct of his employment: using his authorized access to the medical unit, monitoring a prisoner, and exercising custodial and disciplinary control over her movements.

"Conduct that serves any purpose of the employer is within the scope of employment even if the conduct escalates beyond that assigned or permitted." *Id.* at 466. The co-existing motivation analysis dovetails with Texas courts' recognition of the distinction between an employee's conduct that entirely departs from their duties, a "deviation," and an employee's conduct that weaponizes their assigned duties in committing a tort, an "escalation." *Id.* at 467.

In *Doe v. Apostolic Assembly of the Faith in Christ Jesus*, 452 F. Supp. 3d 503, 519-520 (W.D. Tex. 2020), the court analyzed the deviation-versus-escalation distinction in the context of sexual abuse in custodial and care settings. Even though the *Doe* court incorrectly applied a subjective test, it held that sexual assault is not a deviation outside the scope of employment as a matter of law on a motion to dismiss. *Id*. In that case, a youth minister used his position to develop a relationship and emotional connection with a fifteen-year-old girl churchgoer. *Id*. at 514. The minister communicated with the girl by text message, initially about her interests and family but later turning sexual. *Id*. The minister then used his authority to isolate the girl. He picked the girl up at her grandmother's house on multiple occasions—including showing up unannounced—and drove the girl around the neighborhood, making conversation about her

19

school activities and family life before kissing and groping her. *Id*. at 515. Ultimately, at a church-sponsored function, the minister invited the girl to his hotel room and raped her. *Id*.

The Church moved to dismiss the plaintiff's vicarious liability claim against it on the grounds that the minister's sexual abuse of the girl was not within the scope of his employment as a matter of law. *Id*. at 518. The court rejected that argument: "the Fifth Circuit has previously rejected the argument that vicarious liability is precluded in cases of sexual assault as a matter of law." *Id*. at 519, citing *Bodin*, 462 F.3d at 485 (cleaned up). Instead, the court held that whether an employee ceased to act as an employee is a question of fact. *Id*. Because the minister used his employer-delegated authority, access, and duties to groom, isolate, and manipulate the girl, the abuse "stemmed directly from the employee's exercise (however inappropriate or excessive) of a delegated right or duty," and the plaintiff sufficiently alleged he was acting within the scope of his employment. *Id*. at 520 (cleaned up). The tortious conduct was an escalation of his authorized interactions rather than an independent deviation from them. *Id*. at 520-521.

Just as the Church in *Doe* granted the minister access to young churchgoers, the BOP granted Feeney unfettered access to paralyzed, physically dependent women prisoners in a medical unit. In *Doe*, the minister used his status to discuss family and school before introducing sexual pressure. Here, Feeney initially used his position as a correctional officer to befriend Ms. Holland, talking to her about family, football, church, and Bible studies to establish trust. Dkt. 35 ¶¶ 124-126. He made Ms. Holland feel like he was a nice guy who wanted to treat prisoners with kindness. *Id.* ¶ 127. Then, like the minister moving from friendly to sexual conversation, Feeney began talking to Ms. Holland about his sexual partners. *Id.* ¶ 134.

Both assailants then isolated their victims and escalated their physical behavior. The minister isolated the girl in his car, kissed, and groped her. Defendant Feeney, after Ms. Holland

suffered a neurological incident, entered a room where Ms. Holland was alone, then shut the door, sat next to Ms. Holland, and held her hand. *Id.* ¶ 138. Next, like the minister in *Doe* showing up unannounced, Defendant Feeney used his unrestricted access as an officer to unexpectedly enter Ms. Holland's bathroom, where he knew she was isolated and vulnerable due to her physical condition. *Id.* ¶¶ 150-155. Ultimately, he exploited his ability to isolate Ms. Holland, as the minister did in *Doe*, and grabbed Ms. Holland by her left arm and pulled her up. *Id.* ¶¶ 156-158. Then, Defendant Feeney weaponized his employer-conferred authority to command Ms. Holland to "keep her mouth shut" when he raped her. *Id.* ¶¶ 156-158. This objective exercise of his power as an officer fulfilled the satisfaction of his own desires while simultaneously enforcing prisoner compliance.

Just as the youth minister in *Doe* was charged with mentoring and counseling youth parishioners, Feeney was charged by statute with the "safekeeping, care, and subsistence" of federal prisoners. 18 U.S.C. § 4042(a). Feeney's job tasks involved monitoring, supervising, and controlling the movement of highly vulnerable prisoners in this specific unit. For Ms. Holland, this custodial relationship was absolute. Because she was partially paralyzed and required a wheelchair, she was dependent on facility staff for basic life functions, and legally and physically incapable of fighting him off under his supervisory authority. Dkt. 35 at ¶¶ 221, 234. Feeney did not encounter Ms. Holland randomly off-duty; he used his objective, employer-conferred authority as a correctional officer and his authorized access to the unit to isolate her. *Id*. ¶ 221.

Differences between a youth minister and a correctional officer highlight the escalation from Feeney's job tasks to his abuse of Ms. Holland. In a case involving sexual abuse committed by a police officer, the Montana Supreme Court noted that law enforcement officers' duties "include initiating nonconsensual, and at times invasive, physical contact with members of the

21

public pursuant to law enforcement goals." *L.B. v. United States*, 515 P.3d 818, 823-925 (Mont. 2022); *see also Florence v. Bd. of Chosen Freeholders of Burlington*, 566 U.S. 318, 324 (2012) (permitting strip searches requiring incarcerated people to "lift [their] genitals, turn around, and cough in a squatting position as part of the process"); *Terry v. Ohio*, 392 U.S. 1, 17 n.13 (1968) (describing the physically invasive nature of pat-down searches). Defendant Feeney's sexual abuse stemmed from and was incidental to his assigned duties and tasks as a federal correctional officer, including, but not limited to, his authority to search, frisk, detain, and even use physical contact or force, when necessary, against incarcerated people.

Under the objective standards mandated by *Laverie* and *Garza* and the analysis in *Doe*, Ms. Holland has sufficiently alleged that Feeney was acting within the scope of his employment: the abuse stemmed directly from the employee's exercise (however inappropriate or excessive) of a delegated right or duty because Feeney used his employer-delegated authority, access, and duties to groom, isolate, and manipulate Ms. Holland. The tortious conduct was an escalation of his authorized interactions rather than an independent deviation from them.[3]

---

[3] Defendants argue that "numerous courts have found that sexual assault falls outside the scope of employment, as it is clearly motivated by personal reasons." Dkt. 50 at 21. In support, cite multiple cases in a footnote, but each is either factually or procedurally distinguishable. *Id.* n.2. To begin, Defendants cite *Doe v. Taylor Independent School District*, 15 F.3d 443, 468 (5th Cir. 1994), as "holding that physical sexual abuse by a teacher or student could not 'even colorably be within the course or scope of [the teacher's] employment.'" Dkt. 50 at 21, n.2. But the quoted language is from Judge Garwood's dissent and does not reflect the court's holding, which found that the abuse violated the student's due process rights and that the defendant supervisors were not entitled to qualified immunity for their failure to supervise their abusive employee.

Next, Defendants cited two cases decided under summary judgment, not the motion to dismiss, standards. *See Shirley v. United States*, No. 4:03-CV-1385-Y, 2006 U.S. Dist. LX 16169, *4 (N.D. Tex. Mar. 21, 2006) and *Davis v. United States*, 474 F. Supp. 2d 829, 832 (N.D. Tex. Feb. 16, 2007). Further, the *Davis* court held that the BOP employees who assisted the rapist-guard in assaulting the plaintiff were acting within the scope of their employment when their negligence allowed the assailant to commit an intentional tort.

Lastly, Defendants cited two cases with clear factual distinctions. In *Hamburg v. U.S. Postal Serv.*, No. H-10-2186, 2010 U.S. Dist. LX 111566 (S.D. Tex. Oct. 20, 2010), a postal carrier gained access to a person's home by helping her carry in her groceries, then sexually assaulted her in her house. *Id.* at *12-13. Carrying groceries is unrelated to delivering the mail. *Id.* In *M.D.C.G. v. United States*, 956 F.3d 762 (5th Cir. 2020), the plaintiff did not dispute that a Border Patrol officer's sexual assaults fell outside the scope of employment so that issue was not before the court. *Id.* at 769. The officer there drove detainees from the duty station, took them to a remote location, placed tape over their mouths and wrists, and assaulted them. *Id.* In this case, Defendant Feeney neither gained access to Ms. Holland by false pretenses unrelated to his employment nor removed Ms. Holland from government

22

**IV.     Ms. Holland's IIED Claim is Not Duplicative.**

Defendants argue that Ms. Holland's intentional infliction of emotional distress claim

should be dismissed pursuant to the Texas Supreme Court's decision in *Hoffmann-La. Roche,*

*Inc. v. Zeltwanger*, 144 S.W.3d 438 (Tex. 2004). In that case, the Court held that IIED claims

cannot succeed in cases where the plaintiff has other common law remedies covering the same

allegations. *Id*. Here, Defendants' motion overreads the complaint by assuming the IIED claim is

based solely on the sexual assault. It is not a duplicative gap-filler, but is instead also based on

the distinct, extreme, and outrageous retaliatory conduct of facility staff after she reported the

assault.[4] That conduct is not covered by any other claim Ms. Holland has made.

In *Carrothers v. Noblestar Sys. Corp*, No. G-05-610, 2006 U.S. Dist. LX 25253, *12-14

(S.D. Tex. March 21, 2006), a court held that while *Hoffman-LaRoche* and its progeny "may act

to dispose of [the plaintiffs'] [IIED] claims on summary judgment, they do not provide a basis

for dismissal pursuant to Fed. R. Civ. P. 12(b)(6)." *Id*. at *14. Because there was "at least some

set of facts that could entitle [the plaintiffs] to relief" on their IIED claims, the court denied the

motion to dismiss them. In this case, based on Ms. Holland's allegations of relentless retaliation

that caused her to fear for her life, that resulted in her placement in units where she was

endangered, and ultimately caused her to stay in prison custody longer than necessary, there is at

---

property to assault her. The cases Defendants predate the clarity of *Laverie* and *Garza*. And in any case, on their own, they are not applicable here.

[4] Defendants' arguments relating to BOP officials other than Defendant Feeney consists of two conclusory sentences: "Because Holland cannot show Feeney or other BOP officers were acting within the scope of their employment at the time of the alleged assault, they also could not have been acting within the scope of their employment while committing the alleged tort of intentional infliction of emotional distress. Accordingly, sovereign immunity is not waived, and the court lacks subject matter jurisdiction over Holland's intentional-infliction claim." *Id*. at 22-23. Even if this surface treatment properly puts the issue before the Court, following the analysis articulated in section III, *supra*, employees participating in retaliation similarly are not acting outside of the scope of their employment. The retaliation Ms. Holland alleges includes failing to allow her protective custody or other housing when she feared for her safety, as well as delaying her release. These actions fall well within the scope of duties of BOP officers.

least some set of facts related to the facility staff's retaliatory conduct that could entitle Ms. Holland to relief. Further, even if Ms. Holland's IIED claim were duplicative, the Fifth Circuit has held that "[i]f a party makes alternative statements, the pleading is sufficient if *any one of them* is sufficient." *Perkins v. United Surgical Partners, Int'l, Inc.*, No. 23-10375, 2024 U.S. App. LX 8804, *13 n.9 (5th Cir. Apr. 11, 2024) (cleaned up) (emphasis original).  Thus, dismissal is inappropriate. If "the court concludes that the complaint states *any* legally cognizable claim for relief, the court must deny the motion to dismiss and permit the action to continue." *Id*. (emphasis original).

## CONCLUSION

Thus, for these reasons, the Court should deny Defendants' Motion to Dismiss and permit this case to proceed to discovery. In the alternative, this Court should allow Ms. Holland to amend her Complaint to address any pleading deficiencies.

Dated: April 27, 2026                                    Respectfully submitted by,


*/s/ Sara Zampierin*
Sara Zampierin
State Bar No. 24132896
Alexis King*
TEXAS A&M UNIVERSITY CIVIL
RIGHTS CLINIC**
1515 Commerce St.
Fort Worth, TX 76102
T: 817-212-4123
E: sara.zampierin@law.tamu.edu

* Qualified Law Student under Tex. Gov't
Code § 81.102

** Plaintiff is represented by a clinic
operated by Texas A&M University School
of Law, but this document does not purport

24

to present the school's institutional views, if any.


*/s/ Deborah M. Golden*
Deborah M. Golden (*admitted pro hac vice)*
DC Bar # 470-578
dgolden@debgoldenlaw.com
bex kolins (*admitted pro hac vice, pending admission to N.D. Tex.)*
DC Bar # 90035779
bkolins@debgoldenlaw.com
Golden Law
Washington, DC 20003
202-630-0332